```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
───────────────────────────────

```
MARTIN J. WELLS,

                        Plaintiff,
       -vs-                              No. 1:13-CV-00776 (MAT)
                                         CORRECTED
CAROLYN W. COLVIN, ACTING                DECISION AND ORDER
COMMISSIONER OF SOCIAL SECURITY,
                        Defendant.
```
───────────────────────────────

**I.   Introduction**

Represented by counsel, Martin J. Wells ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the plaintiff's cross-motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**II. Procedural History**

The record reveals that on September 30, 2009, plaintiff (d/o/b September 23, 1961) applied for SSI,

alleging disability as of May 25, 2007 due to HIV and AIDS. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge William E. Straub ("the ALJ") on July 19, 2011. The ALJ issued an unfavorable decision on August 15, 2011. The Appeals Council denied review of that decision. This timely action followed.

### III.    The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 30, 2009, the alleged onset date. At step two, the ALJ found that plaintiff's HIV infection and back and neck impairments were severe impairments under the regulations. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ noted that he reviewed listings 1.04 (disorders of

the spine) and 14.08 (human immunodeficiency virus [HIV] infection).

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b). In determining plaintiff's RFC, the ALJ reviewed the medical records in the administrative record but noted that "[a]s for opinion evidence, there [were] no treating or examining physician assessments." T. 31. At step four, the ALJ determined that plaintiff had no past relevant work. At step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. Accordingly, the ALJ found plaintiff not disabled.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42

U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that (1) the ALJ erred in determining plaintiff's RFC without reference to any medical source opinions as to plaintiff's functional limitations; (2) the ALJ erred in finding that plaintiff's HIV infection did not rise to listing-level severity; (3) the ALJ's credibility assessment was erroneous; and (4) the ALJ improperly applied the Medical-Vocational Guidelines ("the grids").

**A. RFC**

Plaintiff argues that the ALJ erred by formulating an RFC finding when the record was devoid of any evidence, from any medical source, as to plaintiff's functional limitations. The Court agrees. As the ALJ explicitly noted in his opinion, "[a]s for opinion evidence, there [were] no treating or examining physician assessments." T. 31. The record reflects that the ALJ did attempt to

obtain a statement from Dr. Lucas Resig, plaintiff's treating chiropractor, but Dr. Resig responded that it was his office policy not to complete disability forms. However, the ALJ failed to request medical source statements from any of plaintiff's other treatment providers, including those who treated plaintiff for his HIV condition, and the ALJ likewise failed to request any consulting examinations.

The regulations provide that although a claimant is generally responsible for providing evidence upon which to base an RFC assessment, before the Administration makes a disability determination, the ALJ is "responsible for developing [the *claimant's*] complete medical history, *including arranging for a consultative examination(s) if necessary*, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945 (emphasis supplied) (citing 20 C.F.R. §§ 416.912(d) through (e)). Although the RFC determination is an issue reserved to the Commissioner, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and

5

as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dailey v. Astrue, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010) (quoting Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).

Here, the administrative record did not contain any acceptable medical source statements regarding plaintiff's functional limitations, if any. The ALJ's evaluation of plaintiff's RFC consisted solely of his interpretation of the bare medical findings in the record, which included, among others, findings regarding plaintiff's HIV condition, objective findings of degenerative changes within plaintiff's lumbar and cervical spine, and evidence from physical examinations regarding plaintiff's limited range of motion. The ALJ was unqualified to interpret these findings, and his decision to do so rather than obtain a medical opinion regarding resulting functional limitations, if any, constituted reversible error. See Hernandez v. Comm'r of Soc. Sec., 2015 WL 275819, *2 (N.D.N.Y. Jan. 22, 2015) (reversing and remanding for ALJ to obtain opinion of

treating physician or other medical source) (citing McBrayer v. Sec'y of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)); Gross v. Astrue, 2014 WL 1806779, *18 (W.D.N.Y. May 7, 2014) (holding that remand was appropriate where the ALJ determined a claimant's RFC "primarily . . . through her own interpretation of various MRIs and x-ray reports contained in the treatment records"); Haskins v. Astrue, 2010 WL 3338742, *5 (N.D.N.Y. Apr. 23, 2010), report and recommendation adopted, 2010 WL 3338748 (N.D.N.Y. Aug. 23, 2010) (reversing and remanding case where "[t]he ALJ failed to re-contact Plaintiff's treating physicians, failed to obtain an SSA consultative examination, and failed to request the opinion of a medical expert").

Moreover, although the ALJ's RFC assessment found that plaintiff was capable of performing the full range of light work, nowhere in his decision does the ALJ explain what functional limitations, if any, supported this determination. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities

7

on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Soc. Sec. Ruling ("SSR") 96-8p, 1996 WL 374174, *1 (July 2, 1996). Indeed, the ALJ could not reference any limitations as given by a medical source, because no medical source opinion was present in the record.

This case is therefore remanded for proper consideration of plaintiff's RFC in accordance with the regulations. On remand, the ALJ is directed to contact plaintiff's treating sources for opinions as to plaintiff's physical functional limitations, and to order consulting opinions as necessary. The ALJ is also directed to assess each medical source opinion in light of the substantial evidence of record, including any supplementary evidence he deems necessary to complete the record, and to state what weight he accords to each medical source opinion.

**B.  Listing 14.08**

Plaintiff contends that the ALJ erred in failing to find that plaintiff suffered from HIV infection as described in Listing 14.08H. To meet that listing, a claimant must show that he has HIV and:

> HIV wasting syndrome, characterized by involuntary weight loss of 10 percent or more of baseline (computed based on pounds, kilograms, or body mass index (BMI)) or other significant involuntary weight loss as described in 14.00F5, and in the absence of a concurrent illness that could explain the findings. With either:
>
> 1. Chronic diarrhea with two or more loose stools daily lasting for 1 month or longer; or
>
> 2. Chronic weakness and documented fever greater than 38°C (100.4°F) for the majority of 1 month or longer.

20 C.F.R. Pt. 404, subpt. P, App. 1, § 14.08H. Plaintiff also contends that the ALJ erred by summarily stating that the listing was reviewed but that "the evidence [was] not compatible with the requirements" of that listing, and by failing to address and state what weight, if any, was given to a statement by nurse practitioner ("NP") Laurie Abbatessa regarding plaintiff's HIV condition. T. 29.

The record establishes that plaintiff was diagnosed with HIV on September 11, 2009. On September 12, plaintiff reported a 20 pound weight loss "over the last few months." T. 210. On that date, plaintiff weighed 137 pounds. Plaintiff also reported feeling generally weak and experiencing night sweats. On September 17, plaintiff presented to the ER at Olean Hospital, reporting nausea and diarrhea which he stated began "gradually, [two] days ago." T. 213. A treatment note dated November 5, 2009 from Erie County Medical Center ("ECMC") states that plaintiff was experiencing "some diarrhea - less than before - more soft than before." T. 242. No other reference is made to diarrhea in the medical record, except for a September 15, 2009 treatment note from ECMC on which appears to check a box stating "[n]o constipation/diarrhea." T. 250. At the administrative hearing held in July 2011, plaintiff testified that he experienced diarrhea every morning, and that this symptom had persisted since it began in 2009. T. 48. He also testified that his normal weight was 175 pounds, but that he weighed 150 pounds at the time of the hearing. T. 46.

On October 15, 2009, NP Abbatessa completed a medical report stating that plaintiff's HIV infection was diagnosed via laboratory testing. NP Abbatessa checked boxes indicating that plaintiff suffered from the opportunistic and indicator diseases such that he met the criteria of Listing 14.08F (conditions of the skin or mucous membranes), 14.08H, and 14.08I (diarrhea, lasting for one month or longer, resistant to treatment, and requiring intravenous hydration, intravenous alimentation, or tube feeding). NP Abbatessa further explained that plaintiff had suffered from diarrhea daily for the last three months, fever for episodes lasting one week each over the last three months, and nausea daily over the last three months.

The ALJ did not address NP Abbatessa's opinion in his decision. As noted above, his discussion of Listing 14.08 consisted of a single sentence summarily stating that "the evidence [was] not compatible with the requirements" of that listing. T. 29. The Commissioner argues that because NP Abbatessa was merely an "other source" (and not an "acceptable medical source") under the regulations

(see 20 C.F.R. 416.913(d)), the ALJ was not required to give her opinion any weight. Although the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, *those decisions should be explained*." Oaks v. Colvin, 2014 WL 5782486, *8 (W.D.N.Y. Nov. 6, 2014) (emphasis added). "The amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." Conlin ex rel. N.T.C.B. v. Colvin, 2015 WL 3961167, *8 (W.D.N.Y. June 29, 2015) (citing 20 C.F.R. § 416.927(c)).

It is apparent from the record that plaintiff had a record of treatment at ECMC with NP Abbatessa and physicians at that institution. Records from both ECMC and Olean Hospital document that plaintiff, for at least some period of time following his application date, suffered from diarrhea. However, it is not entirely clear whether the medical evidence is consistent or inconsistent with NP Abbatessa's conclusion that

12

plaintiff suffered from HIV infection and wasting syndrome as defined in Listing 14.08H. Moreover, although many of plaintiff's records do not document diarrhea as a chief complaint, they do not explicitly state that plaintiff was *not* suffering from diarrhea. Regardless of whether NP Abbatessa's opinion was supported by substantial evidence in the record, it was the ALJ's duty to address the opinion and state what weight he gave it, especially here, where there are no medical source opinions regarding the applicability of the listings to plaintiff's condition.[1] See, e.g., Brown v. Colvin, 2014 WL 1679761, *5 (W.D.N.Y. Apr. 28, 2014) (noting that a nurse practitioner's opinion is "entitled to some weight especially where there is a treatment relationship with plaintiff, . . . [and] [i]t is an abuse of discretion to

---

[1] The Commissioner points to a January 25, 2010 "electronic request for medical advice" completed by state agency physician Dr. J. Dale. T. 268. In that statement, Dr. Dale, who never examined plaintiff, stated that plaintiff "[did] not meet or equal the listings." This conclusory statement, which was not referenced by the ALJ in his opinion, would not have provided substantial evidence even if the ALJ had relied upon it, because it was an opinion on an issue reserved to the Commissioner. See Hendricks v. Comm'r of Soc. Sec., 452 F. Supp. 2d 194, 199 (W.D.N.Y. 2006) ("Whether plaintiff has an impairment or combination of impairments that meets or equals a Listing is a determination reserved for the Commissioner.").

reject a nurse practitioner's opinion out of hand without any further exploration of the basis for that assessment[.]"); Kentile v. Colvin, 2014 WL 3534905, *8 (N.D.N.Y. July 17, 2014) (remanding where ALJ failed to address nurse practitioner's opinion, where, "[b]ased upon plaintiff's treatment and relationship with [that practitioner], the ALJ should have, at the very least, mentioned and considered [the] evidence as 'other source' evidence"). The ALJ's failure to address NP Abbatessa's opinion was not harmless error, because assignment of significant weight to this opinion would have resulted in a presumptive finding of disability under the listings.

This case is therefore reversed and remanded for consideration of NP Abbatessa's opinion regarding the applicability of any subsection of the listings. On remand, the ALJ is directed to assess whether her opinion is consistent with substantial record evidence, including any evidence obtained by the ALJ after supplementing the record as directed above. Additionally, on remand, the ALJ is directed to state what weight, if any, he assigns to NP Abbatessa's opinion.

### C. Credibility Determination and Application of the Grids

Having found remand necessary, the Court does not reach plaintiff's arguments that the ALJ erroneously assessed plaintiff's credibility and misapplied the grids. These arguments primarily address the ALJ's evaluation of the evidence in the record, which will "necessarily be altered" upon the ALJ's development of the record as directed by this Decision and Order. Crowley v. Colvin, 2014 WL 4631888, *5 (S.D.N.Y. Sept. 15, 2014). On remand, the ALJ should consider plaintiff's credibility and the potential application of the grids in light of the newly developed record as a whole.

### V. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 12) is denied, and plaintiff's cross-motion for judgment on the pleadings (Doc. 13) is granted to the extent that this matter is remanded to the Commissioner for further administrative

proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**

                                    HON. MICHAEL A. TELESCA
                                  United States District Judge

Dated:   November 6, 2015
           Rochester, New York.